**Sammie J. SIMS, Plaintiff in Error,**

v.

**Emma SIMS, Respondent, Defendant in Error.**

**No. 38625.**

Supreme Court of Oklahoma.

March 15, 1960.

Amos T. Hall, Tulsa, for plaintiff in error.

Richardson & Cavanagh by Arthur L. Cavanagh, Lawton, for defendant in error.

PER CURIAM.

The action from which this appeal grew was commenced by Sammie J. Sims against Emma Sims seeking custody of his minor daughter, Jo Ann Sims. He alleged in part that he was the natural father of Jo Ann Sims, a minor of the age of 14 years; that the natural mother of said child is dead; that the said child has made her home for several years with her paternal grandfather and her stepgrandmother, the respondent herein; that the said respondent has assumed the care and custody of said minor and although requested to do so, refuses to relinquish custody of said minor to petitioner.

Petitioner further alleged that he was "able to support and care for said child to womanhood"; that he was a fit and proper person to have custody of Jo Ann; that he was earning approximately $310 per month; that he owned his own home; had remarried and that his wife was desirous that he bring his daughter into their home and assist in her proper rearing.

Petitioner testified he had been married three times; his first wife, Serena, was the mother of Jo Ann; they lived in Lawton, Okl.; he left Serena when Jo Ann was two or three months old; that he married a girl in Arizona named Helen, without getting a divorce from Serena and had two children by her; that Serena subsequently died; that he and Helen separated and he went to California and married a woman by the name of Georgia Lee and they are living in Los Angeles.

Petitioner further testified that his present wife and he own a home in Los Angeles, a duplex with six rooms on either side; that they live in one side and rent out the other; that his wife and he are church-going people; that near their home there are some churches, schools, movie theatres and a swimming pool; that his wife would welcome Jo Ann into the family and that they could give her good care.

The further facts are: Jo Ann was born May 10, 1944; her father and mother separated within a short time after she was born and the petitioner's father and stepmother have cared for her since, with little, if any, financial aid from her father. Jo Ann, who will be sixteen years of age next May 10th, testified that as she remembered her father had given her only $35 during her lifetime; that she did not want to go to California and live with her father and stepmother but wanted to live with her mother, meaning Emma Sims.

In addition to her schooling she has been given music lessons, kept in church and Sunday School regularly and is receiving $15 per month for playing the piano at church and plays an instrument in the high school band. The record further shows that Emma Sims reared the child from about a month after she was born and gave

her the loving care of a mother. She loves the girl and the girl loves her.

The evidence shows that respondent is financially able to support Jo Ann and, together with her husband, has supported her for a number of years without any great amount of financial aid from the petitioner.

After a full and complete hearing the trial court found that the petitioner could not take care of the child in such a manner as could the respondent and that the petitioner was a stranger to the child; that the child would not be happy in California and that she elected to stay with respondent.

The petitioner cites and relies for reversal on Hedtke v. Kukuk, 93 Okl. 264, 220 P. 615, and other cases of similar holding, as follows:

"When the mother of the minor child is dead, a father, who is of good character and a proper person to have custody of the child, and reasonably able to provide for it, is entitled to the custody as against other persons."

In Ex parte Hudspeth, Okl., 271 P.2d 371, in the first and second paragraphs of the syllabus it is stated:

"The right of a parent to the custody of a minor child is of great importance in awarding its custody, but it is not an absolute right, and is qualified by considerations affecting the welfare of the child.

"In a habeas corpus action by a parent for the custody of a minor child, three rights or interests are to be regarded: First, that of the child; second, that of the parent; third, that of those who have for years discharged all the obligations of parents."

We are of the opinion that it would be against the best interests of said almost-sixteen-year-old child to change her care and custody at this time, she having elected to stay with the respondent, by whom she has been reared in a good environment.

The judgment of the trial court is affirmed.

DAVISON, C. J., and HALLEY, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.

The Court acknowledges the aid of Supernumerary Judge N. S. Corn in the preparation of this opinion. After a tentative opinion was written, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the court.